UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENETT S.,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>Defendant. | Case No. 22-cv-03217-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 13, 14 |

Plaintiff seeks Social Security benefits for a combination of physical and mental impairments, including spondylosis, depression, anxiety, degenerative disc disease (DDD), and attention-deficit hyperactivity disorder (ADHD). Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her benefits claim. Before the Court are the parties' cross-motions for summary judgment. (Dkt. Nos. 13-1, 14.)[1] After careful consideration of the parties' briefing, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order. Because the ALJ erred in his weighing of medical evidence and Plaintiff's subjective symptom testimony, but there are outstanding issues to be resolved, remand for further proceedings is proper.

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

1

**BACKGROUND**

**I. Procedural History**

Plaintiff applied for disability and disability insurance benefits under Title II of the Social Security Act on October 22, 2019.[2] (Administrative Record ("AR") 179-80.) Plaintiff alleged an amended disability onset date of October 23, 2017 due to DDD, spondylosis, depression, anxiety, and ADHD. (Dkt. No. 13-1 at 10; AR 15.) Her application was initially denied on January 29, 2020 and upon reconsideration on April 22, 2020. (AR 91-94, 99-103.) An Administrative Law Judge ("ALJ") held a hearing on February 23, 2021. (AR 32-70.) On April 7, 2021 the ALJ issued a decision denying Plaintiff's application for disability and disability benefits. (AR 12-31.)

A claimant is considered "disabled" under the Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, she can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; *see* 20 C.F.R. § 404.1520(a).

---

[2] The ALJ decision notes September 20, 2019 as the application date. (AR 15.)

2

Here, at step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of October 23, 2017. (AR 17.) At step two, the ALJ concluded Plaintiff had the following severe impairments: spondylosis, depression, anxiety, DDD, and ADHD. (*Id.*) The ALJ also determined that Plaintiff's skin disorders were not severe. (AR 18.) At step three, the ALJ found Plaintiff's impairments, or combination of impairments, did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listings"). (*Id.*)

Further, at step three the ALJ found Plaintiff had the residual functional capacity to perform light work with the following limitations:

- be on her feet for six hours in an eight-hour day and seated for the remaining two hours;
- ability to sit down at least once per hour to be able to change positions;
- occasional pushing, pulling, climbing, balancing, stooping, kneeling, crouching or crawling;
- no temperature extremes, excessive levels of wetness or humidity;
- no occupational hazards, unprotected heights, dangerous machinery, ropes, ladders or scaffolds;
- limited to jobs involving no more than simple, routine, repetitive tasks that would have been performed in a low-stress work environment, defined as one involving no high volume productivity requirements and very infrequent unexpected changes;
- and no more than occasional interaction with the public, co-workers, and supervisors.

(AR 20.) At step four, the ALJ determined Plaintiff could not perform her past relevant work. (AR 24.) At step five, however, the ALJ found there were other occupations Plaintiff could perform such as non-postal mail clerk, marker, and photocopying machine operator. (AR 24-25.) For these reasons, the ALJ concluded Plaintiff was not disabled. (AR 26-27.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on April 15, 2022, and thereby made the ALJ's decision final. (AR 1-6.) Plaintiff then sought review in this Court. (Dkt. No. 13.) In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment. (Dkt. Nos. 13-1, 14.)

**II. Issues for Review**

    1. Whether the ALJ erred in determining Plaintiff's residual functional capacity (RFC)?

        a) Whether the ALJ erred in evaluating the medical evidence?

        b) Whether the ALJ erred in rejecting Plaintiff's subjective symptom testimony?

    2. Whether the ALJ erred in relying on "incomplete and improper vocational testimony in determining that [Plaintiff] can perform alternative occupations"? (Dkt. No. 13-1 at 2.)

        a) Whether the ALJ "curbed [Plaintiff] counsel's right to cross-examine the vocational witness"? (*Id.*)

    3. Whether to remand for an award of benefits or further proceedings?

# DISCUSSION

**I.  Medical Opinion Evidence**

    The Ninth Circuit has applied the Commissioner's new regulatory framework for evaluating medical opinions for applications filed on or after March 27, 2017. *See Woods v. Kijakazi*, 32 F.4th 785, 789-792 (9th Cir. 2022); *see also* 20 C.F.R. §§ 404.1520c, 416.920c (2017). The new framework eliminates a hierarchy of or deference to medical opinions, and instead uses factors to determine the persuasiveness of a medical opinion. *See Woods*, 32 F.4th at 789-792. The factors are: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *P.H. v. Saul*, No. 19-cv-04800-VKD, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (cleaned up) (quoting 20 C.F.R. § 404.1520c(a), (c)(1)-(5), § 416.920c(a), (c)(1)-(5)).

    The most important factors in evaluating the persuasiveness of medical opinions are supportability and consistency. *See Woods*, 32 F.4th at 791 (citing 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Id.* at 791-92 (cleaned up) (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 792

4

(cleaned up) (citing 20 C.F.R. § 404.1520c(c)(2)).  The third factor—"relationship with the claimant" encompasses "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed, ... and whether the medical source has examined the claimant or merely reviewed the claimant's records." *Id.* at 792 (citing 20 C.F. R. § 404.1520c(c)(3)(i)–(v)).   The ALJ must explain how he considered supportability and consistency, and may, but is not required to explain how he considered factors three, four, and five.  *See id.* at 792; *see also* 20 C.F.R. § 404.1520c(b)(2).

Under the new framework, the ALJ is no longer required to "provide specific and legitimate reasons for rejecting an examining doctor's opinion." *Woods*, 32 F.4th at 787.  Rather, the ALJ's decision must "simply be supported by substantial evidence." *Id.*  The "ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792 (cleaned up).  "The agency must articulate how persuasive it finds all of the medical opinions and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* (cleaned up) (citing 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2).

Plaintiff argues the ALJ erred in discounting the opinion of her treating psychiatrist—Dr. Julian Lagoy.  In January 2021, Dr. Lagoy opined Plaintiff "[was] not able to return to her past work or any type of work due to severe depression and anxiety." (AR 1918.)  Dr. Lagoy noted Plaintiff's "multiple [past] traumas hinder[ed] her from working again" and that Plaintiff could not "carry out [job] tasks or interact with coworkers in a productive manner." (*Id.*)  A month later, in a mental medical source statement, Dr. Lagoy diagnosed Plaintiff with major depressive disorder, an unspecified anxiety disorder, post-traumatic stress disorder (PTSD), and ADHD.  (AR 1920.)  In the same statement, Dr. Lagoy found Plaintiff possessed the following extreme[3] limitations:

- ability to remember locations and work-like procedures;
- ability to understand and remember detailed instructions;

---

[3] The definition of an "extreme" limitation is the "ability to perform designated work-related mental functions, but will have limitations that impair the effective performance of the task incrementally for a total of more than 30% of the eight-hour workday of forty-hour workweek." (AR 1921.)

- ability to carry out detailed instructions;
- ability to maintain attention and concentration for extended periods;
- ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;
- ability to sustain an ordinary routine without special supervision;
- ability to work in coordination with or proximity to others without being unduly distracted by them;
- ability to make simple work-related decisions;
- ability to complete a normal workday/workweek without interruptions from psychologically based symptoms;
- ability to ask simple questions or request assistance;
- ability to accept instructions and to respond appropriately to criticism from supervisors;
- restriction of understanding, remembering, or applying information;
- difficulty in interacting with others;
- and deficiencies of concentration, persistence, or maintaining pace.

(AR 1921-23.) Due to Plaintiff's impairments, Dr. Lagoy determined Plaintiff would be absent from work more than four days per month. (AR 1923.)

The ALJ found Dr. Lagoy's opinion unpersuasive because his opinion (1) "[was] inconsistent with the claimant's medical records during the relevant period that included conservative treatment and generally normal examinations," and (2) "ha[d] minimal relevance to the relevant period." (AR 24.) Plaintiff contends the ALJ's rejection of Dr. Lagoy's medical opinion is not supported by substantial evidence. The Court agrees.

First, the ALJ's conclusion that Dr. Lagoy's opinion is "inconsistent with the claimant's medical records during the relevant period that included generally normal examinations" is not supported by substantial evidence. (AR 24.) The ALJ determined Plaintiff's mental status examinations from November 2016 to January 2018 were "generally normal." (AR 22.) However, the ALJ erred by ignoring the contrary medical evidence and focusing instead on the limited evidence which supported his finding of non-disability. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). "An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination." *Williams v. Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) (internal citations omitted).

Specifically, while the ALJ stated Plaintiff's November 14, 2016 mental status examination was "normal," presumably based on Plaintiff's report that she "fe[lt] overtly better" and was in a "better mood," the ALJ also acknowledged that at this same visit, Plaintiff received diagnoses of recurrent major depressive disorder and general anxiety disorder.  (AR 22, 976-80.) The ALJ characterized Plaintiff's July 7, 2017 examination as "normal except for the claimant having tearful/unhappy affect, low insight and somewhat circumstantial thought process." (AR 22.)  A week later, after being referred to do so, Plaintiff completed psychiatry testing "due to symptoms that may be consistent with ADHD," including "problems focusing."  (AR 1080, 1083.) And, following her July 20, 2017 ADHD screening evaluation, Plaintiff's medications were increased.  (AR 1077.)  The ALJ noted that in a July 26, 2017 examination, Plaintiff stated "she did not experience depression," but also acknowledged that in the same examination, Plaintiff discussed having difficulty focusing and was diagnosed with ADHD.  (AR 22, 1076.)  Similarly, the ALJ cited Plaintiff's "normal" August 7, 2017 mental status examination, but Plaintiff's "chief complaint" for the examination was neck pain and a rash, not her mental impairments.  (*Compare* AR 22 *with* AR 1067-71.)  Further, while the ALJ presumably relied on Plaintiff's reported "normal mood, behavior, motor activity, and thought processes," the examination report also indicates Plaintiff "plan[ed] to follow-up with psychiatry to discuss inattention and hyperactivity symptoms."  (AR 1067-68.)

The ALJ found Plaintiff's medications were "adjusted" on October 27, 2017 "due to her complaints of having problems focusing," and, indeed, the medications were increased as a result of this visit.  (AR 22, 1029-30.)  The ALJ noted that the following month Plaintiff reported she "fe[lt] calmer," (AR 22), even though at her November 6, 2017 examination Plaintiff also reported having continued anxiety and poor concentration.  (AR 1022.)  Plaintiff's increased medications were continued through Plaintiff's January 4, 2018 examination—four days after the date last insured.  (AR 1014-15.)  Lastly, regarding Plaintiff's January 26, 2018 examination, less than one month after the date last insured, the ALJ found Plaintiff's "[m]ental status examination was normal except for the claimant having anxious mood and fair impulse control, insight and judgment."  (AR 22.)  But during that examination, Plaintiff's physician diagnosed her with

7

ADHD, major depressive disorder, and anxiety, among other things, and recommended increasing the dosage of one of her medications when her side effects were controlled, and discontinued the one medication Plaintiff did not believe she needed. (AR 1010-12.)

The above evidence does not support the ALJ's decision to disregard Dr. Lagoy's opinion on the grounds it was inconsistent with the "generally normal examinations." Those examinations were not "generally normal," but instead consistently identified Plaintiff's ongoing mental health symptoms, increased medication, and continued mental health diagnoses. The ALJ also did not explain how the above history reflected "conservative" treatment. Because the ALJ relied on the evidence that supported his conclusion of Plaintiff's non-disability while ignoring medical evidence in the very same reports that undermined his determination, the ALJ's rejection of Dr. Lagoy's medical opinion is not supported by substantial evidence. *See Holohan*, 246 F.3d at 1207.

Second, while the ALJ stated Dr. Lagoy's opinion had "minimal relevance to the relevant period" because it was made "well after the date last insured," it treated the opinion as if it had no relevance at all. This finding is not supported by substantial evidence. In support of his decision not to give any weight to Dr. Lagoy's opinion, the ALJ noted that "Dr. Lagoy began treating the claimant in January of 2021." (*Id.*) Although Dr. Lagoy began treating Plaintiff and provided his medical opinion in January and February of 2021—more than three years after the date last insured— "it is well-settled that medical opinions made after the period for disability are relevant to assess the claimant's disability." *See Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). Further, Dr. Lagoy specifically identified Plaintiff's mental impairment onset date as October 20, 2017. (AR 1923.) And the ALJ's treatment of Dr. Lagoy's opinion was inconsistent with his treatment of Dr. Paxton's review and opinion; the ALJ made no mention of Dr. Paxton's opinion being made more than two years after the date last insured. (AR 23.) *See F.B. v. Kijakazi*, No. 21-01628-JCS, 2022 WL 4544202, at *8-9 (N.D. Cal. Sept. 28, 2022) (rejecting an ALJ supporting one retrospective medical opinion, while rejecting another retrospective medical opinion that conflicted with her findings). Indeed, "where medical opinions refer back to the same chronic condition and symptoms discussed in [earlier medical records] . . . the fact that [the most recent]

opinions were issued significantly after [the claimant's date last insured] does not undercut the weight those opinions are due." *Svaldi v. Berryhill*, 720 F. App'x 342, 343-44 (9th Cir. 2017) (internal citations and quotation marks omitted). Because Dr. Lagoy's opinion was relevant to assess Plaintiff's disability, the ALJ needed to do more than merely point to Dr. Lagoy's examination occurring after the date last insured. *See Smith*, 849 F.2d at 1225-26. Medical opinions and reports are "inevitably rendered retrospectively and should not be disregarded solely on that basis." *Id.* (collecting cases finding that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition.").

The Commissioner's reliance on out-of-circuit district court authority is unpersuasive. (Dkt. No. 14 at 10 (citing *Garcia v. Saul*, 509 F. Supp. 3d 1306, 1313 (D.N.M. 2020); *Ross v. Berryhill*, 385 F. Supp. 3d 767, 778 (W.D. Wisc. 2019).) In the Ninth Circuit, an ALJ cannot disregard medical opinions merely because they were rendered after the date last insured. *Smith*, 849 F.2d at 1225. The cases are also distinguishable. In *Garcia*, the post-last-day-insured opinion revealed the doctor did not purport to offer a retrospective opinion and had *not* reviewed the plaintiff's medical records. *Garcia*, 509 F. Supp. 3d at 1313. Here, Dr. Lagoy *did* make a retrospective opinion and the ALJ made no finding as to whether Dr. Lagoy reviewed the medical records. In *Ross*, the doctor had not recently treated the plaintiff. *Ross*, 385 F.Supp.3d at 778. Here, Dr. Lagoy's opinion was contemporaneous with his treatment of Plaintiff.

The Commissioner's opposition also raises several other reasons why the ALJ might have rejected Dr. Lagoy's opinion, including the length of time he treated Plaintiff and that the record did not affirmatively show Dr. Lagoy reviewed Plaintiff's medical records. (Dkt. No. 14 at 10.) The ALJ, however, did not give those reasons and thus they cannot be considered by this Court. *See Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

\*\*\*

In sum, the ALJ's rejection of Dr. Lagoy's opinion is not supported by substantial

1  evidence.  *See Woods*, 32 F.4th at 792.

2  **II.     Subjective Symptom Testimony**

3        The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (cleaned up). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (cleaned up).

      Applying the two-step analysis, the ALJ first determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 20.) Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of her symptoms, or else find evidence of malingering. *See Lingenfelter*, 504 F.3d at 1036. The ALJ did not find evidence of malingering, but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms not entirely consistent with the medical evidence and other evidence in the record." (AR 21.)

      The ALJ's boilerplate conclusory rationale fails to satisfy the requirement that an ALJ provide "specific, clear, and convincing reasons" supported by substantial evidence for rejecting Plaintiff's subjective symptom testimony. *See Trevizo*, 871 F.3d at 678 (finding the ALJ erred in using "boilerplate language" for the adverse credibility finding rather than offering "specific, clear, and convincing reasons."); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (holding the ALJ erred in failing to "specifically identify any such inconsistencies" and instead stating "her non-credibility conclusion and then summariz[ing] the medical evidence supporting her RFC determination."). To ensure Plaintiff's subjective symptom testimony was

"not arbitrarily discredited," the ALJ must "link [Plaintiff's] testimony to the particular parts of the record supporting [his] non-credibility determination." *Brown-Hunter*, 806 F.3d at 494.

The ALJ's rejection of Plaintiff's subjective symptom testimony based on what he described as a "course of medical treatment" that was "not consistent with disabling impairments," her "conservative treatment" through the date last insured, and a work history "not fully consistent with the claimant's allegations of disability," are not clear and convincing reasons supported by substantial evidence. (AR 21-22.)

First, the ALJ does not indicate what "course of medical treatment" is inconsistent with disability impairments. To the extent the ALJ is relying on what he characterized as Plaintiff's "generally normal examinations," this rationale is not supported by substantial evidence as explained above.

Second, to the extent the ALJ relied upon Plaintiff's "conservative treatment," conservative medical treatment can only be used as a basis for discounting a claimant's testimony when the ALJ identifies the more aggressive treatment options that were available and appropriate, and considers the reasons the claimant did not pursue more aggressive treatment. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("[A]n adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.") (internal citations and quotation marks omitted); *see also Cortes v. Colvin*, No. 2:15-CV-2277 (GJS), 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016) ("[A]n ALJ errs in relying on conservative treatment if the record does not reflect that more aggressive treatment options are appropriate or available." (internal citations and quotation marks omitted)).

Third, the ALJ failed to explain how Plaintiff's work history undermines her subjective testimony. In his brief discussion of Plaintiff's work history, the ALJ found Plaintiff's earning history "unimpressive" and work history "not fully consistent with [Plaintiff's] allegations of disability." (AR 22, 194.) Importantly, the ALJ did not explain how Plaintiff's "unimpressive"

11

earning history was relevant to his rejection of Plaintiff's mental impairment symptom testimony. The Commissioner argues Plaintiff's post-disability onset date income indicates Plaintiff was not as limited as she alleged because she was able to perform some work. (Dkt. No. 14 at 17.) The ALJ, however, did not clearly articulate this rationale. The Court cannot consider the Commissioner's post-hoc explanation of the ALJ's reasoning. *See Bray*, 554 F.3d at 1225. Instead, the ALJ concluded that because Plaintiff applied for a job as a phlebotomist, she had a "subjective belief that she was capable of performing some work." (AR 21.) However, Plaintiff did not complete her phlebotomy degree despite multiple attempts to pass required phlebotomy courses. (AR 40, 245-51.) Additionally, the ALJ ignored Plaintiff's hearing testimony, where she stated she was unable to work due to intermittent pain, depression, and anxiety attacks. (AR 42-43.)

In sum, the ALJ's rejection of Plaintiff's subjective symptom testimony does not satisfy the "demanding clear and convincing standard." *Garrison*, 759 F.3d at 1013.

### III. Vocational Expert Testimony

Because the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence, the Court need not consider Plaintiff's additional argument regarding the ALJ's step-five analysis. Particularly, the Court need not address Plaintiff's vocal expert testimony arguments because the Court's order for further proceedings will result in new testimony.

### IV. Harmless Error

Because the ALJ's consideration of the medical evidence and subjective symptom testimony is not supported by substantial evidence, the ALJ's decision cannot stand. The ALJ's errors here go to the heart of the disability determination and are not harmless. "[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Had the ALJ not erred in evaluating the medical opinion evidence and rejecting Plaintiff's subjective symptom testimony, the ALJ could have reasonably come to a different conclusion regarding Plaintiff's RFC. *See id.*

**V. Remand**

Plaintiff asks the Court to remand the case for the payment of benefits or alternatively, for further proceedings. (Dkt. No. 13-1 at 29.) When reversing an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). Remand for an award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (internal quotation marks and citation omitted).

Here, prong one is not satisfied because the record has not been fully developed. Because the ALJ erred in discounting Dr. Lagoy's opinion and rejecting Plaintiff's subjective symptom testimony to determine her RFC, there are outstanding issues that must be resolved before a final determination can be made. Prong two has been satisfied because as discussed above, the ALJ gave legally insufficient reasons for discounting Dr. Lagoy's opinion and Plaintiff's subjective symptom testimony. The third prong is not satisfied because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if medical opinions were properly evaluated and Plaintiff's symptom testimony was properly credited. For instance, to determine Plaintiff's disability status, the ALJ should reconcile conflicting medical opinions, such as Dr. Lagoy's and Dr. Paxton's, and other evidence in the record finding Plaintiff's impairments could be addressed through work-related limitations. Because the three elements are not met, further proceedings are warranted.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order. Further, because Plaintiff has not provided "evidence of bias, substantial delay, or other reason for disqualification," Plaintiff's request for remand to a different ALJ is DENIED. *See M.P. v. Kijakazi*, No. 21-CV-03632-SVK, 2022 WL 1288986, at *9 (N.D. Cal. Apr. 29, 2022); *see also Rollins v. Massanari*, 261

F.3d 853, 857-58 (9th Cir. 2001) (noting that "ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased" and "this presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification."). Plaintiff has not shown that the ALJ's behavior, in the context of the entire case, was "so extreme as to display clear inability to render fair judgment." *Rollins*, 261 F.3d at 858 (citing *Liteky v. United States*, 510 U.S. 540, 551 (1994)).

This Order disposes of Docket Nos. 13, 14.

**IT IS SO ORDERED.**

Dated: April 25, 2023

JACQUELINE SCOTT CORLEY
United States District Judge